37 N.J. Super. 106 (1955)
117 A.2d 30
KERLINE PFUELLER, PLAINTIFF-RESPONDENT,
v.
ADOLPH PFUELLER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1955.
Decided September 30, 1955.
*107 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Frank M. Lario argued the cause for defendant-appellant.
No one appeared for plaintiff-respondent.
The opinion of the court was delivered by CLAPP, S.J.A.D.
We are concerned in this case with the operation of the Uniform Reciprocal Enforcement of Support Act, N.J.S.A. 2A:4-30.1 et seq., adopted now in many jurisdictions.
The plaintiff, Kerline Pfueller, instituted these proceedings in the Municipal Court of Philadelphia, Domestic Relations Division, to secure support from the defendant, Adolph Pfueller, her husband. There were no children of the marriage. A statement of information signed by her and a verified complaint were apparently transmitted by the Municipal *108 Court to a Juvenile and Domestic Relations Court in this State. The latter court ordered defendant to pay a stated sum for plaintiff's support. He appeals.
The New Jersey court held that its only responsibility was to ascertain whether plaintiff was the wife of the defendant; that the Philadelphia court had "determined the duty of this man to pay before they sent the complaint to us."
This is an obvious misconception. The statute, N.J.S.A. 2A:4-30.11, in this respect identical with the uniform act, sec. 13, places upon the court in the initiating state the duty merely of finding whether the complaint
"sets forth facts from which it may be determined that the defendant owes a duty of support." (Italics inserted.)
Indeed the finding of the Philadelphia court in this case is stated in quite similar terms.
Professor Brockelbank, chairman of the committee which prepared the uniform act for the National Conference of Commissioners on Uniform State Laws, has said of the finding of a court in an initiating state:
"This is not a finding that the defendant owes the duty. The court of the initiating state at that stage could not so find, for the defendant is not before the court." Brockelbank, "Is the Uniform Reciprocal Enforcement of Support Act Constitutional?" 17 Mo. L. Rev. 1, 12 (1952).
In effect it amounts merely to a finding that the allegations of the complaint warrant further proceedings; it is in no way evidentiary as to defendant's liability.
Under the statute it becomes the obligation, not of the initiating court, but of the court in the responding state, to determine whether or not the defendant is under a duty to support the plaintiff. N.J.S.A. 2A:4-30.13. This determination may be made by the latter court only upon the basis of evidence adduced before the court and of depositions taken on notice to defendant after it has secured jurisdiction over him through a summons or warrant.
*109 In the present case the defendant claims he was compelled to testify under penalty of being held in contempt, notwithstanding that he invoked the privilege against self-incrimination. As defendant contends before us, N.J.S.A. 2A:4-30.18 does not affect this privilege; it merely does away with marital disqualifications and the privilege as to confidential communications between husband and wife. N.J.S.A. 2A:81-1, 2A:81-3, 2A:81-7; Commissioners' prefatory note, 9A U.L.A., 1955, supp. 64. In some cases under the uniform act the question may be presented whether the privilege against self-incrimination may be invoked in one jurisdiction with respect to an offense against another jurisdiction. But that controversial question is not presented here. Indeed, we need not deal with any aspect of the privilege against self-incrimination in this case, for it does not appear to us that the trial court here could have understood that this privilege was being invoked. The privilege of course must be claimed, or it is waived. State v. Toscano, 13 N.J. 418, 423 (1953).
We turn then to defendant's testimony. In effect he testified that plaintiff deserted him while they were living together in this State. The trial court had before it no proof whatever that he had deserted her. The case will have to be reversed and remanded.
Since this is a new statute, not construed on this subject in this or any other state so far as we find, we feel called upon to spell out the procedure available to the trial court on the remand of the case. Every endeavor should be made by the courts to render this statute operable, for the objectives of the legislation are very worthy. 9A U.L.A., 1955, supp. 62; Note, 25 Temple L.Q. 336 (1952); Comment, 3 Kan. L. Rev. 44, 58 (1954). Indeed, it has already proved its utility. Gellhorn, Children and Families in the Courts of New York City (1954), 186.
Where, as here, the defendant does not admit the charge of desertion, either expressly or impliedly, the court has open to it two alternative courses of procedure. First, if it is feasible for the wife to appear personally (her residence *110 is fairly near the court in this case), notice can be given to her through the initiating court (perhaps also to her directly by mail) to appear at a specified time, at which time the responding court may take her testimony and such further testimony of the defendant (he having been subpoenaed for the occasion) as may be called for.
Second, if it is not feasible for her to appear personally in court, her deposition may be taken as in a civil action in the Superior Court. Note, 25 Temple L.Q. 336, 342, 343 (1952); Note, 33 Boston Univ. L. Rev. 217, 222 (1953); cf. N.J.S.A. 2A:4-25, repealed, and Comment, 45 Ill. L. Rev. 252, 254 (1950), dealing with a statute similar to N.J.S.A. 2A:4-25; Gellhorn, supra, 184. In such a case, the county adjuster should send a copy of the husband's testimony or (since it is usually not available) a summary of it prepared by the adjuster, to the court in the initiating state, suggesting that if the matter is to be pursued further, the wife's deposition be taken before that court or some proper person (R.R. 4:18-2). Due notice (R.R. 4:20-1) of the time and place at which the deposition is to be taken, should be served personally upon the husband, which service could be effected through the adjuster's office. As provided in the rules, the deposition should be taken stenographically and transcribed, R.R. 4:20-3, signed by the wife, R.R. 4:20-5, certified pursuant to R.R. 4:20-6, and returned to the Clerk of the Juvenile and Domestic Relations Court. A copy of the deposition need however not be sent to the defendant under R.R. 4:20-6(c).
The stenographer's charge for such depositions may constitute an expense which may have to be paid for by the wife. The question whether a Juvenile and Domestic Relations Court in this State, where it is a responding state, may compel the husband to reimburse her for this expense, will have to be reserved until the matter is properly presented. Cf. N.J.S.A. 2A:4-22 to 2A:4-29, repealed; cf. also N.J.S.A. 2A:4-41 applying only to chapter 4 of Title 2A. In this case it is to be noted that Pennsylvania apparently *111 has adopted section 14 of the uniform act (which was not adopted in this State). 9A U.L.A., 1955, supp. 109.
When the deposition is returned to the court in this State (the responding state), the defendant should be subpoenaed, the deposition read to him and a further hearing then accorded him, if he wishes it.
Professor Brockelbank has said:
"When the defendant has given his evidence [at the first hearing in the responding state] and has been cross-examined by the agent named in Section 12 [N.J.S.A. 2A:4-30.12], the court might then make his order but not necessarily so. The transcript might be sent back to the court of the initiating state to allow the plaintiff to offer evidence denying, qualifying or adding to what is in the record. Such action would usually be taken upon motion by the agent named in Section 12. When the more complete record is forwarded to the court of the responding state, a further hearing is had when the court may decide to make his order. It will be seen that the procedure outlined here is an imitation, by sending the record back and forth by mail, of the procedure that prevails when both parties are present in court. In the typical trial the plaintiff and his witnesses testify, then comes the turn of the defendant and his witnesses and finally the plaintiff and his witnesses may reply." Brockelbank, supra, 17 Mo. L. Rev., p. 13.
Here the defendant testifies first, then comes the turn of the plaintiff and finally the defendant may reply.
On this appeal no one appears for the county adjuster who is charged by law with the carrying on of these proceedings. N.J.S.A. 2A:4-30.12. It is part of his statutory obligation to see to it that he is represented on the appeal. Further see R.R. 1:7-4(b).
Reversed and remanded.